**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

Juan Carlos INESTROZA CARBAJAL,

    *Petitioner,*

v.

Antoine FRAZIER, Acting Warden, Metropolitan Detention Center; Kenneth GENALO, New York Field Office Director for U.S. Immigration and Customs Enforcement; Todd BLANCHE, Acting Attorney General of the United States; Markwayne MULLIN, Secretary of Homeland Security; and Todd M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement,

    *Respondents.*

Civil Action No. 26-cv-2778

EMERGENGY PETITION
FOR WRIT OF
HABEAS CORPUS

Petitioner brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and Article I, Section 9, of the Constitution of the United States. Petitioner alleges in support of his petition:

**PRELIMINARY STATEMENT**

1.      Petitioner Juan Carlos Inestroza Carbajal is in the physical custody of Respondents at the Metropolitan Detention Center in Brooklyn (hereinafter "MDC Brooklyn"), New York. He now faces unlawful detention because the Department of Homeland Security ("DHS") and the Executive Office of Immigration Review ("EOIR") have concluded that he is subject to mandatory detention.

2.      Petitioner is charged with having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

3.      Based on this allegation in Petitioner's removal proceedings, DHS denied Petitioner release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who purportedly entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

4.      Similarly, on September 5, 2025, the Board of Immigration Appeals ("BIA" or "Board") issued a precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who purportedly entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216

1

(BIA 2025). The Board determined that such perceived individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

5.      But as the Second Circuit recently held, the discretionary statute 8 U.S.C. § 1226(a), rather than 1225, applies to individuals, allegedly like Petitioner, "who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026). Petitioner's detention under § 1225(b)(2) violates the plain language of the Immigration and Nationality Act, as this provision does not apply to individuals like Petitioner who are now residing in the United States and have been accused of previously entering the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond, and requires an individualized determination upon arrest. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

6.      Petitioner's confinement is unlawful—as confirmed by a cascade of decisions, including within this District and now confirmed by the Second Circuit, that have rejected Respondents' interpretation of Section 1225(b)(2). Accordingly, Petitioner brings this petition seeking immediate and unconditional release.

7.      Petitioner also asks this Court to enjoin his transfer outside this District. *Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1237 (2d Cir. 1992) ("Once the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, the All Writs Act [28 U.S.C. § 1651] authorizes a federal court to protect that jurisdiction" (cleaned up)); *Perez y Perez v. Noem*, 25 Civ. 4828 (DEH), 2025 WL 1908284, at *2 (S.D.N.Y. June 13, 2025).

8.     Alternatively, Petitioner respectfully asks the Court to issue an order to show cause and hold a hearing pursuant to 28 U.S.C. § 2243 on the expedited basis set forth in the statute, during which the Court should (1) find that Petitioner's detention violates federal law and (2) order his release.

## PARTIES

9.     Petitioner JUAN CARLOS INESTROZA CARBAJAL has been in immigration detention since April 20, 2026. Petitioner is unable to obtain review of his custody by an immigration judge, pursuant to the Board's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

10.    Respondent ANTOINE FRAZIER is named in his official capacity as the Acting Warden of the Metropolitan Detention Center.

11.    Respondent KENNETH GENALO is named in his official capacity as the Field Office Director for ICE's New York Field Office. He is responsible for the administration of immigration laws and the execution of detention warrants and removal orders.

12.    Respondent TODD BLANCHE is named in his official capacity as the Acting Attorney General of the United States. He is responsible for the policies and operations of the DOJ.

13.    Respondent MARKWAYNE MULLIN is named in his official capacity as the Secretary of DHS. He directs each of the component agencies within DHS, including ICE.

14.    Respondent TODD M. LYONS is named in his official capacity as Acting Director of ICE. He directs ICE operations and is responsible for the administration of the immigration laws.

## JURISDICTION AND VENUE

15.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause); and 28 U.S.C. § 1651 (All Writs Act).

16.    The federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenge the lawfulness of their detention by DHS. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

17.    Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue is proper in this District under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. Petitioner is incarcerated at the MDC Brooklyn within this District; the ICE office that controls the location of his detention is based in New York City; and a substantial part of the events giving rise to the claims and relevant facts occurred in this District.

## EXHAUSTION

18.    Petitioner is not required to exhaust administrative remedies because doing so would be futile.

19.    Exhaustion of administrative remedies in immigration detention cases is considered a prudential concern, rather than a statutory requirement. *Quintanilla v. Decker*, No. 21 Civ. 417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (citing *Joseph v. Decker*, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)).

20.    Such exhaustion may be excused when any of the following apply: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain

instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

21.     Petitioner's case meets every requirement. Not only will he face irreparable injury if his detention continues, and not only does his petition raise substantial constitutional questions, but intervening events have rendered administrative appeal futile and unable to provide a genuine opportunity for adequate relief.

22.     On September 5, 2025, the Board decided *Matter of Yajure Hurtado*, a precedential decision finding that all people like Petitioner, who have allegedly not been admitted to the United States are *per se* ineligible for bond, even if they are neither a danger nor a flight risk. 29 I. & N. Dec. 216 (BIA 2025). Thus, the BIA will be bound to find that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and deny his release. This is true although the overwhelming majority of district courts in the country that have heard a challenge to this reading of the statute has rejected it out of hand.

**STATEMENT OF FACTS**

23.     Juan Carlos Inestroza Carbajal is a 47-year-old resident of Hempstead, New York, where he has lived for decades. He has worked for the same construction company based in Uniondale, New York, for the past approximately eighteen years. Aside from the ICE arrest on April 20, he has never been arrested.  He is neither a flight risk nor a danger to the community.

24.     On the morning of April 20, 2026, Mr. Inestroza Carbajal met with his boss and coworkers in Roosevelt, New York, ahead of the day's work. A group of ICE agents, with their faces covered, approached Mr. Inestroza Carbajal around 7:20 a.m.

25. The ICE agents claimed, verbally to Mr. Inestroza and his boss, and in documentation produced later that morning, to be searching for a 39-year-old Mexican national named Gabriel Flores Romero.

26. Even though Mr. Inestroza Carbajal was indisputably not the individual the ICE agents were seeking, the ICE officers placed him under arrest, putting handcuffs on his wrists, and removed his wallet from his pocket, where he held his New York state driver's license as well as Occupational Safety and Health Administration ("OSHA") identification cards. When shown a photograph, Mr. Inestroza Carbajal and his boss both informed the ICE agents that they did not know the individual they were searching for, but the ICE agents informed Mr. Inestroza Carbajal that, despite knowing that he was not the person they were seeking, they were going to take him into custody to verify his immigration status anyway.

27. The ICE officers transported Mr. Inestroza Carbajal to 100 Carman Ave., East Meadow, New York, where they issued paperwork including a Form I-877, Record of Sworn Statement in Administrative Proceedings, a Form I-213, Record of Deportable/Inadmissible Alien, a Form I-892, Notice to Appear ("NTA"), and a Form 1815, Notice of Fee Assessment under 8 U.S.C. § 1815.

28. Each of the documents issued to Mr. Inestroza Carbajal that morning listed his address as 80 29th Street, Brooklyn, New York 11232—the address for MDC Brooklyn. ICE did not issue Mr. Inestroza Carbajal a Form I-285, Notice of Custody Determination, or any other paperwork pertaining to its decision to detain him.

29. Around 10:00 a.m. that morning, only around two and a half hours after encountering Mr. Inestroza Carbajal on the street, and while he was still being detained in East

6

Meadow, ICE filed the NTA with the Varick Street Immigration Court in New York, New York, along with a Form I-830 listing his detention location as MDC Brooklyn.

30.    ICE continued to detain Mr. Inestroza Carbajal for two days in East Meadow before transporting him to MDC Brooklyn on Wednesday, April 22, 2026, where he remains detained.

31.    The NTA alleges that Mr. Inestroza Carbajal is not a citizen or national of the United States, but a native and citizen of Honduras who entered the United States at an unknown place and date and was not then admitted or paroled, or that he arrived at a time or place other than designated by the Attorney General. Exhibit A, NTA. The NTA charges Mr. Inestroza Carbajal as removable pursuant to section 212(a)(6)(A)(i) of the INA.

32.    The Form 1815, Notice of Fee Assessment, states that DHS has made a determination that Mr. Inestroza Carbajal is not a citizen or national of the United States, that he has "been apprehended by the [DHS] between ports of entry," and that he is inadmissible under INA § 212(a), and that he therefore is required to pay a fee in the amount of $5,130, which will become subject to interest, administrative costs, and late payment penalty charges, in addition to other consequences, if not paid in full within thirty days. Exhibit B, Form 1815.

33.    ICE filed the Form I-213 with the immigration court as "evidence" to support the charge in the NTA. The I-213 states that it was prepared by an officer who was "not involved in the arrest and was assigned to process the arrest" and is signed by an officer identified as "AR 10319 RAINA."

34.    The I-213 filed in immigration court states that Mr. Inestroza Carbajal "freely admitted to an Immigration Officer that he was born in Honduras and has no legal immigration status in the United States." However, the Form I-877, which is signed by the same officer

7

"Raina" and an additional witness, states that Mr. Inestroza Carbajal "refused to provide a statement without a lawyer present" in response to questions about his citizenship and immigration status.

35.    The documents provided by ICE do not reflect any other encounter or record of Mr. Inestroza Carbajal prior to his arrest on the street that morning.

36.    Mr. Inestroza Carbajal remains detained at MDC Brooklyn and his next immigration court hearing is scheduled for May 13, 2026.

37.    ICE did not make any individualized custody determination before detaining Mr. Inestroza Carbajal at MDC Brooklyn. Pursuant to *Matter of Yajure Hurtado*, an immigration judge is unable to consider Petitioner's bond request.

38.    As a result, Petitioner remains in detention. Without relief from this Court, he faces the prospect of months, or even years, in immigration custody, separated from his community.

## LEGAL BACKGROUND

**Immigration Detention Framework**

39.    The INA prescribes three basic forms of detention for the vast majority of alleged noncitizens in removal proceedings.

40.    First, 8 U.S.C. § 1226 authorizes the detention of alleged noncitizens in standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while alleged noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

8

41.     Second, the INA provides for mandatory detention of alleged noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

42.     Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a) - (b).

43.     This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

44.     Detention under Section 1226(a) is discretionary, not mandatory; the government "may release the [detainee] on—(A) a bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole[.]" 8 U.S.C.§ 1226(a)(2)(A)–(B).20.

45.     Under the Section 1226 framework, release is appropriate where a detainee "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [detainee] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). *See Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020) ("8 U.S.C. § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination"); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025). If, after an individualized consideration, ICE chooses to detain the purported noncitizen pursuant to Section 1226(a) pending removal proceedings, the individual may ask for a bond redetermination hearing before the immigration judge. 8 C.F.R. §1003.19.

46.     In contrast with Section 1226, which applies to "certain [detainees] already in the country," *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added), Section 1225(b) governs detention of noncitizens seeking entry into the United States (i.e., "applicants for

9

admission"). In other words, Section 1225(b) mandates detention for those noncitizens subject to it, and they are not eligible to be considered for release.

47.    Section 1225(b)(2)(A) applies to a narrower subset of applicants for admission. It provides that, "if the examining officer determines that a[] [noncitizen] *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

48.    For decades after the enactment of detention provisions at § 1226(a) and § 1225(b)(2), people who allegedly entered the country without inspection but who were already in the United States at the time of an ICE arrest were detained under § 1226(a) rather than § 1225(b)(2). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). As the Supreme Court has made clear, "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an [alleged noncitizen] 'pending a decision on whether the [alleged noncitizen] is to be removed from the United States.'" *Jennings*, 583 U.S. at 287-89.

49.    On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy[1] that rejected well-established understanding of the statutory framework and reversed decades of practice. The policy claims that all persons who allegedly entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A), regardless of when a person is apprehended, and it affects even those who have resided in the United States for months, years, and even decades or longer.

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

50.    On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all purported noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

51.    Since Respondents adopted their new policy, "over ninety percent of district court judges" have "rejected the government's position." *Cunha*, 2026 WL 1146044. *See also Rodriguez,* 2025 WL 2782499, at *1 (collecting cases and noting that innumerable district courts "ha[ve] concluded that the government's [new] position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.");[2] *see also Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025) (finding that the government cannot point to an Article III court that has adopted their expansive construction of § 1225(b)(2)); *Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) (same).

52.    Courts have rejected DHS's and EOIR's new interpretation because it defies the INA. The government's recently adopted position also ignores the text of § 1225(b)(2). For § 1225(b)(2) to apply, an examining immigration officer must make three separate determinations:

---

[2] *See*, *e.g., Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Aceros, v. Kaiser, et al.*, 25-CV-06924 (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112 (D. Nev. 2025); *Romero v. Hyde*, 795 F. Supp. 3d 271 (D. Mass. 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Maldonado v. Olson*, 795 F. Supp. 3d 1134 (D. Minn. 2025); *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231 (D.N.M. 2025); *Beltran Barrera v. Tindall*, 3:25-CV-541 (RGJ), 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025); *Jimenez v. FCI Berlin, Warden,* 799 F. Supp. 3d 59 (D.N.H. 2025); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247 (D. Me. 2025).

11

that a person is 1) an applicant for admission; 2) seeking admission; and 3) not clearly and beyond a doubt entitled to be admitted. Section 1225(a)(1) defines an "applicant for admission" as [a noncitizen] present in the United States who has not been admitted or who arrives in the United States." As the Second Circuit explained, "[t]he term "seeking" is in the present participle form, which expresses present action. *Cunha*, 2026 WL 1146044, at *6. The government's interpretation that all purportedly inadmissible individuals are "seeking admission" within the meaning of § 1225(b) renders the meaning of the term identical to the statutorily defined term "applicant for admission." Such an interpretation violates the rule of surplusage and negates the plain meaning of text. *Id*. at *6.

53.    The legislative history further shows that § 1226(a) was intended to "restate[] the [then-]current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (quoting H.R. Rep. No. 104-469, at 229 (1996)). Indeed, shortly after IIRIRA's enactment, the former Immigration and Naturalization Service and EOIR (which houses the Immigration Courts and BIA) issued an interim rule to implement the statute that expressly stated: "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

54.    Thus, for almost 30 years, all participants in the immigration system have understood that people arrested inside the United States generally fall within § 1226 for detention purposes and therefore, unless subject to bars not applicable here, are required to receive a bond hearing upon request—even if they purportedly initially entered the country without permission.

Such a longstanding and consistent interpretation "is powerful evidence that interpreting the Act in [this] way is natural and reasonable." *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *see also Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (relying in part on "over 60 years" of government interpretation and practice to reject government's new proposed interpretation of the law at issue). As the Second Circuit noted, "the fact that the Executive Branch has for nearly three decades acted inconsistently with the newfound interpretation strongly counsels against adopting it." *Cunha*, 2026 WL 1146044, at *19.

55.     The LRA amendments to § 1226 that occurred just this year, § 119, 139 Stat. 3, also confirmed widespread understanding that individuals allegedly not admitted or paroled were still detained pursuant to § 1226(a) if they were detained while already in the United States. Congress expressly included inadmissible individuals who have been convicted of certain crimes as subject to mandatory detention under § 1226(c)(1)(E). Again, if every alleged noncitizen who was present without being admitted was already subject to mandatory detention under § 1225(b)(2), Congress would have had no reason to pass an entirely new provision in order to make those individual subject to mandatory detention under § 1226(c)(1)(E) if they committed one of the listed crimes. *See Cunha*, 2026 WL 1146044, at *17 (finding that the government's reading would render this provision "superfluous").

56.     Petitioner was not arrested while "seeking admission" in the United States – he was detained in the United States at a job he had held for nearly two decades.

57.     Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who resided in the United States at the time they were

apprehended. Petitioner's detention is governed by § 1226(a), and his continued detention under § 1225(b)(2) is in excess of statutory authority and *ultra vires.*

### Purported Noncitizens' Procedural Due Process Rights

58.    The Due Process Clause of the Fifth Amendment entitles even noncitizens to due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). As clearly enunciated by the Supreme Court, the protection of the Due Process Clause applies to noncitizens in the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) (citations omitted).

59.    Stated simply, "while [DHS] might want to enforce this country's immigration laws efficiently, it cannot do that at the expense of fairness and due process." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) (citing *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954)).

60.    Further, purported noncitizens are entitled to procedural due process protections, even in the face of policy shifts between administrations. While a "new administration can change the rules . . . it cannot change them and make up new rules as it goes along when the new rules abridge constitutional rights." *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 149 (W.D.N.Y. 2025).

61.    In the context of immigration detention due process claims, the Second Circuit has applied the three-factor balancing test set forth in *Mathews v. Eldridge* to determine what due process requires. These factors are: (i) "the private interest that will be affected by the official action"; (ii) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).

62.     In light of a noncitizen's due process rights and the procedural rights conferred by Section 1226(a) and the implementing regulations, a decision to detain a purported noncitizen requires an individualized determination as to that person's risk of flight and danger to the community. *See Velesaca v. Decker*, No. 20-CV-1803, 458 F. Supp. 3d 224, 235 (S.D.N.Y. 2020); *Lopez Benitez*, 795 F. Supp. at 495; *Kelly v. Almodovar*, No. 25-CV-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025).

63.     Under the *Mathews* rubric, freedom from imprisonment, physical restraint, or other forms of government custody is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Lopez Benitez*, 795 F. Supp. at 492 ("[Petitioner] invokes the most significant liberty interest there is—the interest in being free from imprisonment") (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)) (citing *Hamdi*, 542 U.S. at 529); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. Nov. 22, 2019) (noncitizens in immigration custody had an arguably even greater liberty interest in remaining out of detention than criminal parolees who required due process protection).

64.     With respect to the second *Mathews* factor, given the strong liberty interest at stake, the Fifth Amendment's guarantee of due process requires at least some notice and an opportunity to be heard before a person can be placed in immigration detention. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025). Further, due process requires that "notice must be afforded within a reasonable time and in such a manner as will allow [immigration detainees] to actually seek . . . relief[.]" *Id.*

65.    For the third *Mathews* factor, "the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate government purpose." *Velasco Lopez*, 978 F.3d at 854. The recognized government interests in immigration detention are "ensuring the appearance of [purported noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. Absent evidence in the record that a purported noncitizen is dangerous or likely to abscond, district courts have held that the government cannot demonstrate a significant interest in their detention. *See Lopez Benitez*, 795 F. Supp. at 496; *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218–19 (S.D.N.Y. 2025).

66.    Recent decisions by federal courts in various jurisdictions confirm that due process requires the government to make individualized determinations to detain purported noncitizens and give them notice and a meaningful opportunity to be heard when challenging their detention. Further, if a purported noncitizen does not receive individualized consideration pre-deprivation, his due process rights are irrevocably violated, and no amount of procedure provided post-detention can remedy that violation. *See, e.g.*, *Lopez Benitez*, 795 F. Supp. at 497 ("Given the nature of the constitutional violation Mr. Lopez Benitez sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment before detaining him— any post-deprivation review by an immigration judge would be inadequate."); *see also Chipantiza-Sisalema v. Francis, et al.*, Case No. 25 Civ.5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (finding bond "hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.") (citation modified); *Kelly*, 2025 WL 2381591, at *3 (same).

16

67.    As a result, courts have ordered an alleged noncitizen's immediate release where their pre-detention due process rights have been violated. Here, immediate release is appropriate because Respondents have not—and cannot—show that they conducted an individualized determination regarding Petitioner before his summary arrest, at his job, in a raid ICE conducted looking for someone else. *Cuy Comes v. DeLeon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *6 (S.D.N.Y. Nov. 14, 2025) (ordering immediate release where petitioner's first encounter with ICE was a detention without an individualized determination); *Perez Velasquez v. Noem*, No. 25 CIV. 10338 (AT), 2025 WL 3707526, at *4 (S.D.N.Y. Dec. 22, 2025) (same); *Campos v. Deleon*, No. 25-CV-10099 (LJL), 2025 WL 3514120, at *2 (S.D.N.Y. Dec. 8, 2025) (collecting cases).

68.    Respondents' reliance on Section 1225(b)(2)'s mandatory detention provision establishes their decision to forgo any evaluation of whether Petitioner's circumstances would otherwise warrant detention under Section 1226, which provides the sole lawful authority for detaining individuals residing in the U.S.

69.    "It is clear, not only from the language of [28 U.S.C.] §§ 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (ordering release where detention became unlawful once condition release date had passed); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy [for unlawful detention] is, of course, release.") (citation omitted).

70.    No procedural alternative to release can serve as an effective remedy. *See, e.g., Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y.

17

Nov. 28, 2025) (ordering release and explaining that "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out."); *Tumba v. Francis*, No. 25-cv-8110 (LJL), 2025 WL 3079014, at *8-9 (S.D.N.Y. Nov. 4, 2025) (ordering release); *Hyppolite*, 2025 WL 2829511, at *16 (same). Petitioner's detention was unlawful from the moment he was detained and then taken into custody. Respondents afforded him no process before detention and have baselessly asserted authority to subject him to mandatory detention.

71.    In the alternative, Petitioner seeks at a minimum a bond hearing at which Respondents bear the burden of justifying his continued detention by clear and convincing evidence. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Although he submits this is insufficient to vindicate the immense due-process violation inherent in his race-based detention, a bond hearing is a mechanism to mitigate his continued unlawful confinement.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:

### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1226(a) and 8 U.S.C. § 1226(a)

72.    Petitioner realleges and incorporates by reference each and every allegation contained above.

73.    The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all alleged noncitizens residing in the interior of the United States.

18

74. Petitioner is detained under § 1226(a), as reflected by DHS's own documents, binding law, and longstanding historical practice. Yet DHS contends, following BIA caselaw, that Petitioner is subject to mandatory detention under § 1225(b)(2).

75. Section 1226(a) requires an individualized, pre-deprivation determination that an alleged noncitizen whom Respondents intend to detain presents a danger or a flight risk.

76. ICE did not conduct an individualized determination of the propriety of Petitioner's detention before it detained him.

77. The application of §1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

### SECOND CAUSE OF ACTION:

### ICE'S FAILURE TO EXERCISE ITS DISCRETION VIOLATES DUE PROCESS, U.S. CONST. AMEND V

78. Petitioner realleges and incorporates by reference each and every allegation contained above.

79. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

80. In assessing whether a person has been deprived of the right to procedural due process, courts weigh the factors from *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal

19

and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

81.     Here, all three factors weigh in favor of finding that Respondents have violated Petitioner's right to procedural due process by asserting unlawful authority to subject him to mandatory detention, by affording Petitioner no process upon detention, and by providing Petitioner no way to meaningfully contest his unlawful detention.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE FOURTH AMENDMENT TO THE CONSTITUTION
#### (Freedom from Unlawful Stop and Seizure)

82.     Petitioner realleges and incorporates by reference each and every allegation contained above.

83.     The Fourth Amendment protects "the right of the people to be secure in their persons . . . against unreasonable searches and seizures" and establishes that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." U.S. Const. amend. IV.

84.     Except at the border and its functional equivalents, the Fourth Amendment prohibits Respondents from conducting a detentive stop to question a person without reasonable suspicion that a person is a noncitizen unlawfully in the United States. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). The Government bears the burden of providing "specific and articulable facts" to support reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). The race of an individual cannot itself create reasonable suspicion, even for a temporary stop. *United States v. Brignoni-Ponce*, 422 U.S. 873, 887 (1975); *Noem v. Vasquez Perdomo*, No. 25A169, --- S.Ct. ----, 2025 WL 2585637, at *3 (Sep. 8, 2025) (Kavanaugh, J., concurring).

20

Officers lacked reasonable suspicion to even approach Petitioner and certainly lacked probable cause to arrest him.

85.    "[T]o establish reasonable suspicion, an officer cannot rely solely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006); *see also Noem v. Vasquez Perdomo*, 606 U.S. __ (2025), 2025 WL 2585637, at *3 (Kavanaugh, J., concurring) ("To be clear, apparent ethnicity alone cannot furnish reasonable suspicion[.]").

86.    Respondents had no basis to stop, search and detain Petitioner apart from his race. ICE officials were present at Petitioner's job searching for another person, and only detained him because of his race. Indeed, his detention was part of a coordinated, indiscriminate sweep of individuals who appeared to be of Hispanic descent in certain communities of New York. Hispanic individuals are stopped, detained, questioned, and in some cases threatened based solely on their race.

87.    Petitioner's detention violates the Fourth Amendment because he was arrested without probable cause or a proper warrant. *See, e.g., Gamez Lira v. Noem*, No. 1:25-CV-00855, 2025 WL 2581710, at *3–4 (D.N.M. Sept. 5, 2025) (finding habeas petitioner's Fourth Amendment claim likely to succeed in showing arrest and continued detention unconstitutional when Respondents failed to make a probable cause determination before re-arresting and detaining noncitizen in removal proceedings).

88.    The appropriate remedy for this violation is release from detention. *See, e.g., Rosado*, 2025 WL 2337099, at *18, *report and recommendation adopted*, 2025 WL 2349133 (ordering habeas petitioner's "release from detention . . . granted because her Fourth Amendment rights were violated.").

## FOURTH CAUSE OF ACTION:

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A)

89.     Petitioner realleges and incorporates by reference each and every allegation contained above.

90.     The Administrative Procedure Act permits a reviewing court, as relevant here, to "hold unlawful and set aside agency, findings, and conclusions found to be—(A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law[.]".

91.     Agency action is arbitrary and capricious or an abuse of discretion where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

92.     Petitioner's detention is final agency action reviewable under the APA because it marks the consummation of DHS's decisionmaking process and determines his rights under law.

93.     Petitioner's detention violates the APA in at least five ways:

      a.     Respondents' assertion of authority to subject Petitioner to mandatory detention under § 1225(b)(2)(A) is in excess of statutory authority or limitations, and is ultra vires;

b.    Respondents' detention of Petitioner without the individualized determination as to danger and flight risk required by 8 U.S.C. § 1226(a) is an abuse of discretion and without observance of procedure required by law;

94.    Respondents' detention of Petitioner therefore violates the APA.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1.    Assume jurisdiction over this matter;

2.    Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court or removing him from the United States pending the resolution of this case, pursuant to the All Writs Act;[3]

3.    Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from custody without any additional restraints on his liberty, including electronic monitoring, and enjoining any re-detention under the immigration laws of the United States, pending a final determination in his removal proceedings;

4.    In the alternative, the Court should conduct a constitutionally adequate, individualized bond hearing for the Petitioner within 7 days. If, instead, Respondents are ordered

---

[3] *See Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1237 (2d Cir. 1992) ("Once the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, the All Writs Act [28 U.S.C. § 1651] authorizes a federal court to protect that jurisdiction" (cleaned up)). *See also* Order, *Ozturk v. Hyde*, No. 25-cv-374 at 68 (WKS) (D.Vt. Apr. 18, 2025), ECF No. 104 (ordering Petitioner's transfer from Louisiana back to Vermont).

23

to carry out such a hearing in front of an impartial adjudicator, the Court should direct that at that hearing:

a.      ICE must bear the burden of establishing by clear and convincing evidence that continued detention is justified;

b.      The adjudicator must meaningfully consider alternatives to imprisonment such as release on recognizance, parole or electronic monitoring; and

c.      The adjudicator must meaningfully consider Petitioner's ability to pay if setting a monetary bond.

5.      Award Petitioner costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6.      Grant such further relief as the Court deems just and proper.


Respectfully Submitted,


Dated: May 8, 2026                          /s/ Tara Thompson
Manhattan, NY                               Tara Thompson
                                            LOEVY & LOEVY
                                            310 Lenox Avenue
                                            Third Floor
                                            New York, NY 10027
                                            (773) 540-5608
                                            tara@loevy.com

                                            *Pro Bono Counsel for Petitioner*

**VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF
PURSUANT TO 28 U.S.C. § 2242**

I, <u>Tara Thompson.</u> am submitting this verification on behalf of the Petitioner as an attorney for Petitioner. I, or my co-counsel, have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: May 8, 2026          <u>/s/ Tara Thompson</u>
Manhattan, NY              Tara Thompson
                           LOEVY & LOEVY
                           310 Lenox Avenue
                           Third Floor
                           New York, NY 10027
                           (773) 540-5608
                           tara@loevy.com

                           *Pro Bono Counsel for Petitioner*