

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

May 11, 2026

Honorable Sanket J. Bulsara
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

> Re: *Inestroza Carbajal v. Almodovar,* No. 26-cv-2778 (Bulsara, J.)

Dear Judge Bulsara:

This Office represents Respondents in the above-captioned action in which Petitioner Luis Alfonso Gonzalez Franco ("Petitioner") filed a Petition for a writ of habeas corpus on May 8, 2026 challenging his detention by Immigration and Customs Enforcement ("ICE"). *See* Docket Entry ("DE") # 1. Respondents respectfully submit this letter pursuant to Your Honor's Order entered on May 10, 2026 requiring Respondents to "inform the Court of Petitioner's current location, and [ ] include information about any other locations where Petitioner has been held and the dates of any transfers since his initial detention," and to respond to the Petition by May 8, 2026 at 7 p.m.

As explained below, the Petition for Writ of Habeas Corpus ("Petition") should be denied. Petitioner is properly being detained pursuant to 8 U.S.C. § 1226(a), and the custody determination by Immigration and Customs Enforcement ("ICE") is not subject to district court review.

**Background**

Petitioner was arrested on April 20, 2026. See Declaration of Deportation Officer Dmitry Rousseau ("Rousseau Decl.") ¶ 5. Petitioner was initially detained pursuant to pursuant to § 235(b)(2)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2)(A). *Id.* ¶ 6.

ICE transported him to the Nassau County ICE Intake for post-arrest processing, during which ICE served Petitioner with a Form I-862, Notice to Appear ("NTA"). *Id.* ¶ 6, Ex. A. Petitioner was then transferred from the Nassau County ICE Intake to Nassau County Correctional Center in East Meadow, New York. On April 22, 2026, Petitioner was transferred from Nassau County Correctional Center to Delaney Hall Detention Facility in Newark, New Jersey. *Id.* ¶ 9. On April 23, 2026, Petitioner was transferred from Delaney Hall Detention Facility to Metropolitan Detention Center in Brooklyn, New York, where he currently remains detained. *Id.* ¶ 9.

On April 28, 2026, the United States Court of Appeals for the Second Circuit issued its decision in *Cunha v. Freden*, --- F.4th ----, 2026 WL 1146044 (2d Cir. Apr. 28, 2026). The Second Circuit held that § 1225(b)(2)(A) does not apply to aliens who are present in the United States after

1

entering the country without inspection and admission, and who were not apprehended at or near the border at the time of entry. *Id.* at *2. Rather, the Second Circuit held that § 236(a) of the INA, 8 U.S.C. § 1226(a) ("Section 1226(a)") would apply in those circumstances.[1] *Id.* ICE has been working on identifying, and providing custodial determinations required under Section 1226(a) to those who are now subject to the Section 1226(a) detention authority. *See* Rousseau Decl. ¶ 15.

Because *Cunha* controls in the factual circumstances that apply to Petitioner, Respondents respectfully submit that Petitioner's detention, which was at the time he was detained on April 20 under 8 U.S.C. § 1225(b)(2)(A), is now pursuant to Section 1226(a). On May 8, 2026, ICE's local field office ("ICE New York") received a list of aliens in custody who might be subject to INA § 236(a), 8 U.S.C. § 1226(a) in light of the Second Circuit decision *Barbosa da Cunha*, which list included Petitioner. Rousseau Decl. ¶ 15. ICE New York had previously begun that process, prior to May 8, and had conducted a number of custodial determinations; however, Petitioner was identified in the May 8 list. ICE is in the process of conducting custody determinations for those individuals subject to INA § 236(a), 8 U.S.C. § 1226(a) for whom a custody determination had not been previously done. *Id.*

On May 11, 2026, ICE provided Petitioner with an individualized custody determination and concluded that he did not establish that he did not pose a flight risk. *See* Rousseau Decl. ¶ 16, Ex. B.[2] That determination was provided to Petitioner, but Petitioner refused to sign acknowledgement. *Id.* Petitioner did not request review of his custody determination by an immigration judge ("IJ"). *Id.*

## The Habeas Petition Should Be Denied

Petitioner is properly being detained pursuant to § 1226(a), and his remedy, if any, administrative. As noted above, on April 28, 2026, the Second Circuit held in *Cunha* that § 1226(a) applies to aliens who, like Petitioner, entered the United States without inspection and admission and were not apprehended at or near the border at the time of entry. 2026 WL 1146044, at *2.

Under § 1226(a), the Government may arrest and detain an alien during his removal proceedings or release him on bond or conditional parole. Section 1226(a) provides, in relevant part, that:

On a warrant[3] issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

---

[1] The Government is still evaluating next steps in *Cuhna*. For purposes of a potential future appeal, in the event *Cunha* is vacated, stayed, or overruled, Respondents respectfully preserve their arguments that § 1225(b)(2)(A) applies.

[2] Respondents acknowledge that this Court has previously held that custodial determinations under Section 1226(a) should be made "prior to, or contemporaneous with" the initial detention determination. *See Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025). However, this case presents a different factual scenario in that the initial custody determination here was made pursuant to Section 1225(b)(2)(A), and therefore no custodial determination, as required under Section 1226(a), was conducted at that time. Since *Cunha*, ICE has been making efforts to identify aliens, like Petitioner, to whom *Cunha* would apply. See Rousseau Decl. ¶ 15.

[3] ICE arrested Petitioner pursuant to INA 287(a)(2), 8 U.S.C. 1357(a)(2). Rousseau Decl. ¶ 6.

Except as provided in subsection (c) and pending such decision, the Attorney General

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole;

8 U.S.C. § 1226(a). By regulation, immigration officers conduct custodial determinations and may release aliens if the alien meets his burden of showing that he "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). *See Fontanelli, as Next Friend of Bernal Garcia v. Francis*, No. 25-cv-07715 (JLR), 2025 WL 2773234, at *4 (S.D.N.Y. Sept. 29, 2025) ("The Government's broad [post-arrest detention] discretion under § 1226(a) has a limitation: before the Government may exercise such discretion to detain a person, § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination, specifically whether the noncitizen is a danger to person or property or persons and is likely to appear for any future proceeding.") (citations and internal quotation marks omitted); *Hamilton v. Shanahan*, No. 09-cv-6869 (SAS), 2009 WL 5173927, at *2 (recognizing that the alien bears the burden of proof). *See also Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020) (referring to "post-arrest custody determination" under § 1226(a).)

Once ICE makes the individualized custody determination, 8 U.S.C. § 1226(e) jurisdictionally bars courts from reviewing that determination. Section 1226(e) provides that "[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by [ICE] under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Thus, "[a] district court has no authority to review ICE's discretionary determinations made under [Section 1226] or otherwise question their propriety." *Id*. (citing 8 U.S.C. § 1226(e)). *Fontanelli*, 2025 WL 2773234, at *4.

After ICE makes the initial custody determination, an alien can request a custody redetermination (*i.e.*, a bond hearing) by an immigration judge ("IJ") at any time before a final order of removal is issued. *See* 8 C.F.R. § 236.1(d)(1). Under 8 C.F.R. § 1003.19(h)(3), an alien may seek a redetermination of custody conditions set by ICE before an immigration judge must "first demonstrate, by clear and convincing evidence, that release would not pose a danger to other persons or to property. If an alien meets this burden, the alien must further demonstrate, by clear and convincing evidence, that the alien is likely to appear for any scheduled proceeding or interview." *See Hylton v. Shanahan*, 2015 WL 3604328 (S.D.N.Y. June 9, 2015) (declining to shift burden of proof onto government in a bond hearing in immigration court where respondent was detained under § 1226(a)).

If dissatisfied with the IJ decision, the alien can seek review by the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. §§ 236.1(d)(3), 1003.19(F), 1003.38, 1236.1(d)(3). *See also Monterosa v. Decker*, No. 20-cv-02653, 2020 WL 1847771, at *3 (S.D.N.Y. Apr. 11, 2020) ("After

3

ICE makes and initial detention decision, any person who is detained has the right to request a bond hearing before an Immigration Judge.").

No judicial review is available. *See Arevalo-Guasco v. Dubois*, 788 Fed Appx. 25, 27 (2d Cir. 2019) (concluding that § 1226(e) precludes judicial review of the IJ's weighing of evidence and factual findings regarding whether [Petitioner-Appellant] is a danger to the community"); *Hamilton v. Shanahan*, No. 09-cv-6869 (SAS), 2009 WL 5173927, at *3 ("Section 1226(e) specifically divests [district courts] of jurisdiction to review the decisions of the IJ and the BIA (acting on behalf of the Attorney General) regarding the detention of aliens under Section 1226.")

Here, now that the Second Circuit has ruled in *Cunha* that § 1226(a) is the relevant detention authority, and not mandatory detention under 8 USC 1225(b)(2)(A), ICE is detaining Petitioner during pursuant to Section 1226(a). ICE has made an individualized custody determination that Petitioner poses a flight risk. Rousseau Decl. ¶ 16. Petitioner has not requested review of that custody determination by an IJ, therefore a bond hearing has not been scheduled (let alone BIA review of such IJ decision, if the outcome were to prove unfavorable to Petitioner). *Id.* Therefore, Petitioner has not exhausted administrative remedies. Numerous courts in this Circuit have held that to the extent that habeas petitioners want to challenge the initial custody determination, ordinarily they must exhaust administrative remedies before seeking federal court intervention. *See, e.g.*, *Almonte Rojas v. Genalo*, No. 25-cv-6543, 2026 WL 275991, at *1 (E.D.N.Y. Feb. 3, 2026) (Komitee, J.) (citing *Castillo Lachapel v. Joyce*, 786 F. Supp. 3d 860, 864 (S.D.N.Y. 2025)); *accord Fontanelli*, 2025 2773224, at *5-*8. *See also Capunay Guzman v. Joyce*, 786 F.Supp.3d 865, 869 (S.D.N.Y. 2025); *J.C.G. v. Genalo*, No. 24-cv-8755 (JLR), 2025 WL 88831, at *4 (S.D.N.Y. Jan. 14, 2025); *Roman v. Decker*, No. 20-cv-3752 (JGK), 2020 WL 4273823, at * 7 (S.D.N.Y. July 24, 2020); *Michalski v. Decker*, 279 F. Supp. 3d 487, 496 (S.D.N.Y. 2018); *Paz Nativi v. Shanahan*, No. 16-cv-8496, 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) ("before immigration detention may be challenged in federal court . . . exhaustion is generally required as a prudential matter" (collecting cases)). The exhaustion requirement "aims to provide the agency with a chance to correct its own errors, 'protect[ ] the authority of administrative agencies,' and otherwise conserve judicial resources by 'limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary.'" *Id.* (*quoting Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.)).

As Petitioner has received an initial custody determination pursuant to § 1226(a), but he has failed to pursue his administrative remedies (*i.e.*, a bond hearing before an IJ), the Petition should be denied and this action dismissed. *See, e.g.*, *Portillo Melara v. Tellez*, No. 26-cv-1453, 2026 WL 1146054 (E.D.N.Y. Apr. 28, 2026) (Donnelly, J.); *Almonte Rojas*, 2026 WL 275991, at *1. As the court in *Castillo Lachapel* explained, "[i]f the immigration judge releases [petitioner] on bond, his [habeas petition would be moot . . . . And even if the immigration judge denies bond, [the] petition could be mooted if the Board of Immigration Appeals reverses that determination." 786 F. Supp. 3d at 864 (internal quotation marks and citation omitted).

Nor do any of the recognized exceptions to exhaustion apply here. A district court may in its discretion excuse exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile and (4) in certain instances a plaintiff has raised a substantial

4

constitutional question." *See Beharry*, 329 F.2d at 62. Numerous courts in this Circuit have also found that none of these exceptions apply where, as here, an immigration judge or the BIA could release a habeas petitioner detained under 8 U.S.C. § 1226(a) on bond. *See, e.g.*, *Castillo Lachapel*, 2025 WL 1685576 at *3; *Capunay Guzman*, 2025 WL 1696891 at *2-*3; *Monterosa*, 2020 WL 1847771 at *6-*7; *Roman*, 2020 WL 4273823, at *7; *Michalski*, 279 F. Supp. 3d at 496.

With respect to the first exception, as explained above, Petitioner has available administrative remedies—a bond hearing with an immigration judge *and* appeal of the immigration judge's decision, if adverse, to the BIA. *See Castilla Lachapel*, 2025 WL 1685576, at *3 (describing the two levels of administrative review available to petitioner). "Because [Petitioner]'s [potential] bond hearing may provide him with the relief that he seeks—i.e., his release—this Court concludes in the exercise of its discretion that [Petitioner] must exhaust these avenues before seeking judicial relief." *Id.* (internal quotations and citations omitted). *See Michalski*, 279 F. Supp. 3d at 496 (finding that a scheduled bond hearing "scuttles" petitioner's habeas petition because the immigration judge could release him on bond making his habeas petition moot); *Paz Nativi*, 2017 WL 281751, at *2 ("The pendency of a BIA appeal that could potentially moot [petitioner's] habeas petition counsels for the Court to stay its hand until the exhaustion of administrative review in the name of preserving scarce judicial resources and avoiding the possibility of duplicative or conflicting rulings.").

The second exception is also inapplicable. Petitioner cannot show irreparable harm at this time. Now that the Second Circuit has ruled in *Cunha* that § 1226(a) is the relevant detention authority, he has received an individualized custody determination but failed to avail himself of available administrative remedies. *See Capunay Guzman*, 2025 WL 1696891, at *1, *3 (where petitioner had been detained for nineteen days "'[t]he risk of prolonged detention'—as opposed to actual prolonged detention—'does not constitute an irreparable injury that excuses the prudential exhaustion requirement'") (quoting *Roman*, 2020 WL 4273823, at *8).

Similarly, as to the third exception, Petitioner has not shown that a bond hearing would be futile. *See Michalski*, 279 F. Supp. 3d at 496; *Capunay Guzman*, 2025 WL 1696891, at *2 (petitioner's "arguments concerning the futility of any bond motion are similarly premature, as he has not yet made a motion for bond"). *See also Cabral v. Decker*, 331 F. Supp. 3d 255, 263 n. 6 (S.D.N.Y. 2018) ("[T]he question of whether the petitioner's yet-to-happen bond hearing complies with due process is not before this Court.").

With respect to the fourth exception, "[m]ere existence of a constitutional issue . . . does not create an automatic exception to an exhaustion requirement." *Monterosa,* 2020 WL 1847771, at *5. "Thus, when applying this exception, 'courts will endeavor to avoid deciding a constitutional issue if the case might be resolved on a narrower factual basis.'" *Capunay Guzman*, 2025 WL 1696891, at *3 (quoting *Monterosa*, 2020 WL 1847771, at *5). As the court in *Capunary Guzman* noted, only a few courts in this Circuit have excused exhaustion under the fourth exception in cases where the petitioner had been detained and denied bond at the bond hearing, or was not yet detained and sought to prevent re-detention. *See id.* (collecting cases).

Accordingly, Respondents respectfully request that the Petition be denied. Respondents thank the Court for consideration of this submission.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ Megan Freismuth
Megan Freismuth
Assistant U.S. Attorney

Cc: Counsel of record by ECF

6