UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JUAN CARLOS INESTROZA CARBAJAL,

                Petitioner,

      v.

ANTOINE FRAZIER, et al.,

                Respondents.

-----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
26-CV-2778-SJB

**BULSARA, United States District Judge:**

In the hundreds of habeas petitions filed in this District over the last year,

Respondents have taken the position that individuals have been detained pursuant to

8 U.S.C. § 1225(b)(2) — the ostensible reason was to avoid the procedural protections

provided to a noncitizen under 8 U.S.C. § 1226(a).  That legal position — that individuals

living in the United States, some for decades, were "seeking admission" to the

country — was rejected by the Second Circuit.  *See Barbosa da Cunha v. Freden*, -- F.4th --,

No. 25-3141, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026) ("Section 1225(b)(2)(A) does

not apply to such noncitizens, who are present in the United States after entering the

country without inspection and admission, and who were not apprehended while

entering the country or shortly thereafter.").  *Barbosa da Cunha* was decided on April 28,

2026.

Eight days before — on April 20th, Respondents arrested and detained Petitioner

Juan Carlos Inestroza Carbajal ("Inestroza Carbajal"), who has lived in the United States

for decades, having worked for the same construction company for 18 years.  (Pet. for

Writ of Habeas Corpus filed May 8, 2026 ("Pet."), Dkt. No. 1 ¶¶ 23–24).  He has no criminal history, never having been arrested.  (*Id.* ¶ 23).

Respondents state that "Petitioner's detention . . . at the time he was detained on April 20 [was] under 8 U.S.C. § 1225(b)(2)(A)."  (Resp'ts' Letter filed May 11, 2026 ("Resp'ts' Letter"), Dkt. No. 4 at 2; *see also* Decl. of Deportation Officer Dmitry Rousseau ("Rousseau Decl."), Dkt. No. 4-1 ¶ 6 ("At that time [of arrest], Petitioner's detention was governed by 8 U.S.C. § 1225(b)(2)(A).").  That arrest and detention was illegal when it was initiated.  Indeed, Respondents concede as much: "[*Barbosa da*] *Cunha* controls in the factual circumstances that apply to Petitioner."  (Resp'ts' Letter at 2); *Barbosa da Cunha*, 2026 WL 1146044, at *1 (noting petitioner had lived in the United States for more than twenty years and had never been convicted of a crime before he was arrested on his way to work).  Instead of recognizing the illegal detention, Respondents have switched positions—they assert that Petitioner is *now* being detained under 8 U.S.C. § 1226(a), and as a result of their new theory, this Court lacks the power to review such detention.  (Resp'ts' Letter at 1).  In other words, according to Respondents, what began and continued as an illegal detention, became legal because they have found a different source of legal authority.

"[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  And due process does not tolerate the revisionist fiction Respondents have created.

*First*, an executive agency, like ICE, is bound by the bases it used to justify its decision—here the arrest and detention—in the first instance, not reasons it comes up

2

with afterwards.  *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21, 24 (2020) ("The basic rule here is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," and a decision will not be upheld based on "impermissible *post hoc* rationalization." (quotation omitted)); *Lincoln v. Turner*, 874 F.3d 833, 842 (5th Cir. 2017) ("[P]ost-hoc justifications based on facts later learned cannot support an earlier arrest."); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 312 (E.D.N.Y. 2025) ("Once an alien is detained under section 235(b), DHS cannot convert the statutory authority governing her detention from section 235(b) to section 236(a) through the post-hoc issuance of a warrant." (quoting *Matter of Li*, 29 I. & N. Dec. 66, 69 n.4 (BIA 2025))), *appeal dismissed*, No. 26-0219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026); *Singh v. Blanche*, No. 26-CV-2538, 2026 WL 1239057, at *4 (E.D.N.Y. May 6, 2026) ("ICE's detention of Mr. Singh from February 2, 2026 through April 30, 2026 was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2)."); *cf., e.g., Parada Cruz v. Mullin*, No. 26-CV-1110, 2026 WL 1027441, at *4 (E.D.N.Y. Apr. 16, 2026) ("First, in none of these cases have Respondents proceeded on a warrantless basis.  Having issued warrants—presumably because they believed they were required to—they cannot justify detention by relying on an alternative procedure they opted not to use, and wave away the warrants as unnecessary.  The fact is warrants were used and relied on by the officers for the detention and the USAO in their papers opposing the habeas petitions.  Bad facts cannot be ignored to create fictional and alternative realities."); *Bruce v. Perkins*, 701 F. Supp. 163, 164–65 (N.D. Ill.  1988) ("Perkins baldly asserts that even if he improperly

3

arrested Bruce before learning about the warrant, his subsequent discovery of the warrant somehow purged the arrest of any taint.  This argument is preposterous; the Fourth Amendment does not countenance such post hoc rationalization.  Unless Perkins had some reasonable basis for his actions at the moment he arrested Bruce, the arrest violated Bruce's Fourth Amendment rights.").  Respondents simply gloss over their change in legal justification, providing no case or examples to explain why an agency's decision to find other bases for arrest and detention—ones not used at the outset—is permissible.[1]  It would be one thing if Respondents had invoked § 1226(a) to arrest and detain Inestroza Carbajal on April 20th, but they decidedly did not, hoping to avoid having to follow the procedures the statute requires.[2]

Second, it is not just a matter of a switch in legal argument that is problematic, because the switch had tangible consequences on the process Inestroza Carbajal received.  Respondents proceeded under § 1225(b)(2) to deprive Inestroza Carbajal of well-defined procedural protections.  The ICE policy that led to Inestroza Carbajal's initial detention "is defined by its systematic denial" of notice and an opportunity to be

---

[1] In what could be termed legal gaslighting, Respondents act—by not conceding the illegality of the initial detention—as if *Barbosa da Cunha* announced a mere change in law, permitting ongoing detention of individuals detained before April 28, 2026.  But the Second Circuit ruled that the Respondents had been acting illegally in violation of the INA.

[2] To be clear, they could not do both: "A noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226, so if Petitioner was detained pursuant to one provision, she cannot be subject to the other." *Tumba v. Francis*, 813 F. Supp. 3d 394, 402 (S.D.N.Y. 2025) (quotation omitted).  And had Respondents done so, they would have had to extend the procedural protections of § 1226(a) to Inestroza Carbajal, which they did not.

4

heard. *Chipantiza-Sisalema v. Francis*, No. 25-CV-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025). Had Respondents first proceeded under 1226(a), Inestroza Carbajal would have been entitled to an individualized custody determination, the ability to seek bond before an immigration judge, and further appellate process:

> [T]he regulations implementing Section 1226(a) delegate to DHS officers the authority to grant bond or conditional parole, and pursuant to such authority, a DHS officer must make an individualized determination as to whether detention is appropriate based on two factors—whether the noncitizen is (1) a danger to property or persons and (2) is likely to appear for any future proceeding. The noncitizen has an opportunity to appeal a detention decision by the DHS officer who conducted this individualized assessment to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors.

*Rodriguez-Acurio*, 811 F. Supp. 3d at 316–17 (citing 8 C.F.R. § 1236.1(c)(8) and 8 C.F.R. § 1003.19(d)) (further citations omitted); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) ("[B]efore the Government may exercise such discretion to detain a person, § 1226 and its implementing regulations require ICE officials to make an individualized custody determination." (quotation omitted)); *e.g.*, *Tumba v. Francis*, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025) (noting "the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." (quotation omitted)); *Han v. Noem*, -- F. Supp. 3d --, No. 25-CV-10753, 2026 WL 322963, at *7 (S.D.N.Y. Feb. 6, 2026) (determining that the petitioner's due process rights were violated where there was no evidence of an individualized determination prior to detention). Instead of adhering to these regulations, Respondents ignored them, and

5

arrested and detained Inestroza Carbajal without giving him the required process under the legal authority they now use to continue his detention.

"To be sure, not every procedural misstep raises a constitutional issue. However, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and ICE fails to adhere to it, the challenged action is invalid[.]" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)).  Indeed, regulations like those attendant to § 1226(a) exist "to ensure that '[t]he notion of fair play animating [the Fifth] [A]mendment' is upheld, and to prevent an 'agency from promulgating a regulation affecting an individual liberty or interest,' and then 'with impunity ignor[ing] or disregard[ing]' it." *Ndoye v. Joyce*, No. 25-CV-8856, 2026 WL 306387, at *9 (S.D.N.Y. Feb. 5, 2026) (quoting *Montilla v. I.N.S.*, 926 F.2d 162, 164 (2d Cir. 1991)).  But that is exactly what Respondents' post-hoc justifications do.

*Third*, Respondents cannot "cure" their procedural failures—the failure to comply with the procedural requirements of § 1226(a)—by now providing a custody determination, three weeks after arrest.  The regulation requires an "initial" custody determination.  8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").  "ICE [must] engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at

6

the heart of the Due Process Clause." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (quotation omitted). A post-detention bond hearing is not a substitute for this requirement. *See id.*; *Lopez Benitez*, 795 F. Supp. 3d at 497; *Silva Rueda v. Catletti*, No. 26-CV-2977, 2026 WL 1194956, at *4 (S.D.N.Y. May 1, 2026) ("A bond hearing cannot retrospectively cure the due process violation, which derived from Petitioner's unlawful arrest and detention without the statutorily required exercise of discretion. . . . The harm began when Petitioner was detained without process and continues with each day he remains in custody." (quotations omitted)) (collecting cases). A custody determination undertaken weeks later is not either. *E.g.*, *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 295 (S.D.N.Y. 2025) ("[A]llowing a detainee to be heard after the deprivation has already occurred does not satisfy due process." (quotation omitted)).

There is a fundamental due process problem with proceeding with a custody determination weeks after arrest and detention. The balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), governs this analysis. Courts balance (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the . . . fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

With respect to the first prong, "[c]ase after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception.'" *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (quoting *United States v. Salerno*, 481 U.S. 739, 755

7

(1987)); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Inestroza Carbajal's detention implicates "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851; *e.g.*, *Munoz Caraguay v. Larocco*, -- F. Supp. 3d --, No. 26-CV-0569, 2026 WL 294842, at *3 (E.D.N.Y. Feb. 4, 2026) ("ICE's detention of Mr. Munoz Caraguay without any notice or opportunity to be heard infringes on the most significant liberty interest there is—the interest in being free from imprisonment." (quotation omitted)).[3]

As to the second prong, Respondents' proffered procedure presents a high risk of erroneous deprivation. *E.g.*, *Munoz Caraguay*, 2026 WL 294842, at *3 ("[T]here is a high risk of erroneous deprivation through the procedures used to detain Mr. Munoz Caraguay because the Federal Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him[.]"). Taken to its logical conclusion, Respondents could detain someone who does not fall within any of the categories that Congress has identified as warranting immediate and mandatory detention or someone

---

[3] Congress can place certain restrictions on this scheme—for example, by according presumptions of detention for certain crimes, *e.g.*, 18 U.S.C. § 3142(e)(3), or in the immigration context, by replacing an initial judicial determination with a determination by an agency officer with subsequent recourse to administrative and ultimately judicial appeals, *e.g.*, 8 C.F.R. § 236.1. But the cross-current of these schemes is that they provide what the Due Process Clause demands: prompt process to ensure that an individual is not jailed for days, weeks, or months at a time erroneously or without legal basis.

who is not subject to a final order of removal, and then weeks later provide them an opportunity to demonstrate they are entitled to release. "The purpose of requiring an exercise of discretion [under Section 1226(a)] prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty." *Lopez Benitez*, 795 F. Supp. 3d at 495. Without any notice or opportunity to be heard, including an individualized assessment as to flight or public safety risk at the outset, an after-the-fact custody determination at an arbitrary point in time, after the deprivation has already occurred, violates due process. *See J.M.P*, 807 F. Supp. 3d at 295.[4]

And as to the third *Mathews* prong, while the individual's liberty interest in this situation is at its apex, the Government's interest or rationale for such prolonged, unreviewed detention is virtually nonexistent. *E.g.*, *Munoz Caraguay*, 2026 WL 294842, at *3 (noting no Government interest was identified that was advanced by ICE's detention of petitioner without notice or opportunity to be heard); *cf. County of Riverside v. McLaughlin*, 500 U.S. 44, 55 (1991) ("A State has no legitimate interest in detaining for extended periods individuals who have been arrested without probable cause."). The discretion to detain an individual under § 1226(a) is valid only "where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future

---

[4] It may be that after an initial determination, a period of prolonged detention may entitle a person to additional process. *E.g.*, *Velasco Lopez*, 978 F.3d at 857 ("[T]he district court's order requiring the Government to prove that Velasco Lopez is a danger to the community or a flight risk by clear and convincing evidence to justify his continued detention strikes a fair balance between the rights of the individual and the legitimate concerns of the state." (quotations omitted)). But this case is different: a failure to give any initial process to challenge the deprivation of liberty.

immigration proceedings" and "preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025).  But here, there was no initial determination as to the need to detain Inestroza Carbajal—he was presumed to be subject to mandatory detention under § 1225.  Allowing for a custody determination three weeks later does not advance any legitimate governmental purpose, since the only reason for the delay was the Government's decision to use a process deemed illegal by the Court of Appeals.

Weighing all the *Mathews* factors, Respondents' detention of Inestroza Carbajal without an initial custody determination, and an attempt to remedy that failure after three weeks of detention, violates due process.

An analogy here is appropriate.  It has long been understood that in a criminal case, individuals arrested without a warrant are entitled to "prompt" judicial determinations of whether there is probable cause to detain them.  *Gernstein v. Pugh*, 420 U.S. 103, 124–25 (1975) ("Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest.").  This is because of the significant restraint of liberty attendant to the arrest: potentially prolonged pretrial detention.  *Id.*; *see also McLaughlin*, 500 U.S. at 52.  Individuals arrested before a final removal order is entered, either before or during removal proceedings, have a similar liberty interest.  *Cf. Addington v. Texas*, 441 U.S. 418, 425 (1979) ("[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.").  And as such they are entitled to a prompt determination of the validity of their detention.

And the "cure" appears to be an illusion.  Other than in conclusory fashion, Respondents do not explain why Inestroza Carbajal is a flight risk or danger to the community—and indeed, his decades long presence in the United States and lack of criminal history suggest neither is the case.  (*See* Rousseau Decl. ¶ 16 (basing flight risk on Inestroza Carbajal's original unauthorized entry into the United States, and flight on foot when officers initially approached him)).[5]  Preventive detention based on dangerousness is limited "to specially dangerous individuals and subject to strong procedural protections."  *Zadvydas*, 533 U.S. at 691.  And the mere lack of status does not present a per se risk of flight.  *See Barbosa da Cunha*, 2026 WL 1146044, at *21.  But the process here—cursory and conclusory described—suggests Respondents have blown right past these definitions with respect to Inestroza Carbajal.

In sum, Respondents' detention, effectuated pursuant to § 1225(b)(2) violated Inestroza Carbajal's due process rights.  Hundreds of judges in countless cases have found that the arrests and detention of individuals like Inestroza Carbajal—a resident of the United States for an extended period of time—under § 1225(b)(2) violated their procedural due process rights.  *See Barco Mercado v. Francis,* 811 F. Supp 3d 487, 494 (S.D.N.Y. 2025) (explaining that the Government's position "has been challenged in at least 362 cases in federal district courts" and the "challengers have prevailed, either on a preliminary or final basis in 350 of those cases decided by over 160 different judges

---

[5] The "flight risk" factor is not a colloquial question of whether someone might "flee" or fled from law enforcement when approached.  Rather, at an initial custody determination, the question is whether "the alien is likely to appear for any future proceeding."  8 C.F.R. 1236.1(c)(8).  This standard appears nowhere in the ICE Officer's declaration concerning his evaluation of Inestroza Carbajal.

sitting in about fifty different courts spread across the United States"). In such cases, the traditional *Mathews* factors weighed in the Petitioner's favor. *See Y- C- v. Genalo*, No. 25-CV-6558, 2025 WL 3653496, at *6 (E.D.N.Y. Dec. 17, 2025) ("The Court agrees with the other district courts that have found that the first two *Mathews* factor weighs heavily in petitioner's favor and the third factor does not weigh in either direction.") (collecting cases).

Respondents' change in legal position, post-hoc rationalizations, and attempts to remedy do not vitiate an arrest and detention that was illegal from its inception. *See Ndoye*, 2026 WL 306387, at *9 ("Absent [adherence to procedural regulations promulgated to protect constitutional rights], the agency will be free to either engage in preplanned decisions to unlawfully detain individuals and then come up with post hoc rationalizations, or merely randomly stage 'encounters' without the intent to unlawfully detain individuals and then create post hoc rationalizations for these unlawful detentions. Under either scenario such procedures are unmoored from the fixed system of laws and regulations that ensures that due process remains a cornerstone of our administration of justice."). As such, with a plain constitutional due process violation, the writ is provisionally granted.

12

Respondents are directed to effectuate Petitioner's release by **May 13, 2026 at 5:00 P.M.** and file a letter on the docket confirming Petitioner's release by that time. Respondents may not use ICE GPS monitors or similar technology to monitor Petitioner or impose additional conditions of release, because the Court has granted the writ.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  May 12, 2026
Central Islip, New York

13